UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

MICHAEL CHANDLER, )
)
      Plaintiff, )
)
vs. ) CV 96-PT-1000-M
)
DEKALB COUNTY SCHOOL BOARD, et )
al., )
)
      Defendants. )

FILED '97 APR -4 PM 2:15 U.S. DISTRICT COURT N.D. OF ALABAMA

ENTERED APR 4 1997

## Memorandum Opinion

This cause comes on to be heard on a motion for summary judgment filed by the defendants, the DeKalb County School Board ("School Board"), County Superintendent of Education Weldon Parrish ("Parrish" or "Superintendent"), and School Board members Willard Israel ("Israel"), Mary Etta Bailey ("Bailey"), Jimmy Wilbanks ("Wilbanks"), Johnny Young ("Young"), and Tommie Johnson ("Johnson") (together "Board members") on February 10, 1997. In the motion, the defendants contest the claims of the plaintiff, Michael Chandler ("Chandler"), that they retaliated against him in violation of the First Amendment and that they conspired to deprive him of his First Amendment rights.[1]

On a motion for summary judgment, the court must assess the proof to ascertain whether

---

[1] The plaintiff's First Amendment claims were brought under 42 U.S.C. §§ 1983 & 1985(3). Initially, the plaintiff also brought a Title VII claim for religious discrimination, but abandoned that claim in his brief in response to the motion for summary judgment. Any Title VII claim will therefore be DISMISSED, with prejudice.

there is a genuine need for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is appropriate only if this court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing this court of the grounds for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes prove the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met this burden, the nonmoving party "must produce evidence that shows there exists a genuine issue of material fact." Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing the presence of a genuine issue for trial. Celotex, 477 U.S. at 324. The court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . " in deciding whether to grant or deny a summary judgment motion. FED. R. CIV. P. 56(c). In resolving whether a given factual dispute requires submission to a jury, the court must view the presented evidence through the prism of the substantive evidentiary burden. Anderson, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992). Considering the above, this court must examine the evidence to determine the existence of genuine issues of material fact as to the various issues.

## Facts

All "facts" are stated most favorably to the plaintiff. They may or may not be the actual facts.

The plaintiff has been an employee of the DeKalb County school system from 1974 until the present. He was a teacher until 1988, when he became counselor and assistant principal at Valley Head School. Since 1988, the plaintiff has regularly complained of religious practices being permitted in the DeKalb County Schools. Among his complaints, he has stated that the schools have illegally permitted religious camp counselors to teach religion and distribute religion camp

fliers among the students, the reading of devotionals and prayers during the school day and school release programs to aid attendance at Bible classes at a nearby Baptist Church. Because of these complaints, the plaintiff claims, he has established a reputation in DeKalb County for being an anti-religious malcontent. The plaintiff claims that due to the reputation engendered by his complaints, he was passed over for promotion to openings for the principal job at several different DeKalb County schools.

The process of hiring of a principal for a school in DeKalb County begins when the Superintendent of Education recommends an individual for the position. The recommended individual is then either approved or disapproved by School Board. If the School Board approves the candidate, the Trustees of the individual school then approve or reject the candidate for the position.

The first alleged denial of a promotion to the plaintiff occurred in 1991, when he allegedly inquired about principal positions at the Ider and Crossville schools. When the plaintiff asked Parrish, the Superintendent of Education, whether he should meet with Parrish to discuss his interest in the position, Parrish stated that the plaintiff should not meet with him. Parrish states that he does not remember any conversation with the plaintiff regarding a promotion to principal at either of the schools.

Allegedly, the Ider Trustees, who were consulted by Parrish in the hiring decision, were presented with a list of three potential candidates, on which the plaintiff's name was absent. One of those people listed, David Uptain, who had been an assistant principal at another school for the prior year, was hired at Ider. According to the plaintiff, Uptain, who was interviewed by Parrish, had never complained of school prayer practices and had listed a church preference as Baptist. The plaintiff also states that the principal of Valley Head was called by an Ider Trustee who inquired whether the plaintiff was the person who had been complaining of religious practices in the schools.

Parrish did not recommend the plaintiff for the Crossville position, instead recommending Butch Cassidy. Parrish alleges that he did not consider the plaintiff because he did not think him to be an adequate disciplinarian, although, the plaintiff avers, Parrish was not informed of any deficiencies in the plaintiff's ability to discipline until 1994.

In 1994, the plaintiff alleges, three principal positions opened in the DeKalb County school system for which he was qualified, but for which he was passed over. In June of 1994, Mr. Charles

Warren became principal at Henager. The plaintiff alleges that Warren was sought out for the job in reference to the plaintiff. On August 9, 1994, Danny Gann was allegedly promoted over the plaintiff to the position of principal at Ider. Parrish states that his recommendation of Gann was based upon Gann's ability to handle discipline.

The third principal position for which the plaintiff was passed over (and of which he primarily complains he was improperly denied) was the position at Valley Head that opened when Elaine Dobbs, then principal of Valley Head, was promoted to the position of Elementary/Chapter I Supervisor. As the plaintiff states in his brief:

> Mr. Parrish testified that during [a] conversation with Ms. Dobbs, he allegedly asked her, "How would Mr. Chandler be at handling high school discipline or could he handle high school discipline. Her answer was no; he wouldn't be good at it. I don't remember the exact words." (Parrish Depo., pp. 226-27). He did not ask her in particular on what she based her opinion. Mr. Parrish claims Mr. Chandler was the first person he considered for the job.
>
> By Saturday, August 6, 1994, Mr. Parrish had prepared and distributed to Board members the prospective agenda for the Tuesday, August 9, 1994, special meeting held to recommend and vote on the principals for Valley Head and Ider.
>
> On this agenda, Mr. Parrish recommended Ms. Claudine Kirby as the principal of Valley Head. Ms. Kirby, a first grade school teacher at Ider, had filled out an annual questionnaire that had no request for a transfer. Nevertheless, Mr. Parrish claims he talked to her principal, who told him that Ms. Kirby could handle discipline well. When asked if there was some reason he thought she should be a principal before becoming an assistant principal, Mr. Parrish said: "No more than anyone else." Mr. Parrish did admit Ms. Kirby had never complained about the religious practices in the school.
>
> Mr. Lyndell Chappell, a Trustee at Valley Head, said he heard that Elaine Dobbs was cleaning out her desk and that the principal's position was open. After he talked with his wife and the other two Trustees, they put up signs and had a "community meeting" on the Sunday before the Board meeting.
>
> Before that Sunday meeting, Mr. Chappell talked with Mr. Parrish, who informed him that Claudine Kirby was going to get the principal job. When Chappell asked about her qualifications, Parrish reportedly told him that Ms. Kirby was an elementary school teacher at Ider and how many years experience she had. Mr. Parrish made it seem like a "done deal". A number of people in the community were concerned about her getting the job.
>
> Mr. Chappell learned of Gary Talley's name from Glen Carden who came to his house. Mr. Chappell then called Talley telling him about the interest in Mr. Talley's becoming the principal at Valley Head. Talley related to Chappell that he had been a coach at Sylvania but had never held an administrative position in the school system. Before the community meeting on Sunday, the three (3) Trustees met with Gary Talley, Jim Gregory, and maybe someone else. However, according to Mr. Chappell, Mr. Talley and Ms. Kirby were the only two (2) candidates discussed before the Sunday meeting. One of the problems they had with Ms. Kirby was that she had never had any administrative role and had been a first grade teacher.
>
> The meeting was held between two and three o'clock in the afternoon. Chappell says 200 people were present, and among them were Harold and Anne Marie Foshee and Mrs. David Meadows. Mr. Chappell denies that anyone brought up Mike Chandler's name

> for the position of principal, or that he was referred to as an "atheist". Mr. Chappell denies that Mr. Chandler's name was even mentioned at the meeting.
>
> Mrs. Ann[e] Marie Foshee was present at the meeting and said no more than 20 or 25 people were present. Moreover, she said when she suggested Mike Chandler for the principal position in a manner she knows the Trustees heard, a woman nearby yelled out that he was an atheist and they did not want that sort there.
>
> Mr. Chappell and the other two Trustees met with Mr. Parrish on Monday afternoon and told him that they wanted Gary Talley. Mr. Parrish, however, repeated that he was recommending Claudine Kirby. There was no mention of Mike Chandler's name in that Monday afternoon meeting. Before the Board meeting, Mr. Chappell delivered a letter from the Trustees to Mr. Parrish and each member of the Board. This letter recommended Mr. Talley and threatened to reject the placement of Ms. Kirby. Upon being questioned, Mr. Chappell said he thinks he told Mr. Parrish that Mr. Chandler did not have community support.
>
> Mr. Chappell testified that he had previously heard from Elaine Dobbs that Mike Chandler was the one complaining about religious practices. Further, Chappell said it was well known in the community that Mr. Chandler objected to religious practices in the schools. He had also heard Mr. Chandler referred to as an "atheist." According to him, Mr. Chappell had heard all of this before the school-prayer lawsuit was filed in February 1996. Mr. Johnson met with Parrish on Monday morning after the community [meeting] and told him the community choice was for Mr. Talley. His agenda for the August 9, 1994, Board meeting reflected a line drawn through Ms. Kirby's name. A second Board meeting was set for Friday, August 12, 1994, when Gary Talley was appointed principal at Valley Head.
>
> After speaking to Mr. Parrish on Monday morning, Mr. Johnson ran into Mack Whiteside at the courthouse. When a discussion about the Valley Head principal position came up, Mr. Whiteside opined that Mr. Chandler should have the job since he had been there as assistant for so many years. Mr. Johnson said: "[h]e's not going to get the job because of this religion thing and not that I feel he's wrong. I think there's probably things going on in the county that shouldn't be, especially at Fyffe."
>
> When Mike Chandler went to see Mr. Johnson at his home the following Thursday, Chandler told Johnson that he had been at the school for nine (9) years and did not want ot be passed over because of his complaints about illegal activities. Mr. Johnson did not respond to this but simply said he did not know who was going to get the job. Mr. Johnson says he told Chandler that if Parrish recommended Chandler for the job, Mr. Johnson would vote for him. However, Mr. Johnson claims the idea of Mr. Chandler's being principal never occurred to him.
>
> Mr. Chandler also met with Mr. Parrish on Thursday and told him the same thing. However, Mr. Parrish simply said that Mr. Chandler did not have community support and that some of the reasons were legal and some were not.

Plaintiff's Brief in Response to Motion for Summary Judgment, pp. 11-14. The plaintiff does not discuss the facts with respect to the position of principal at Fyffe.

## Contentions & Analysis

The arguments of the parties pass each other with few points of contact. This is largely due to the defendants' focus on the plaintiff's abandoned Title VII claim. To the degree that the defendants' arguments are specifically relevant to the plaintiff's contentions, they will be addressed here.

The First Amendment to the United States Constitution is incorporated through the Due Process Clause of the Fourteenth Amendment to prevent state and local government bodies from engaging in certain forms of speech regulation. Fiske v. Kansas, 274 U.S. 380, 386-87 (1927). For example, "a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." Connick v. Myers, 461 U.S. 138, 142 (1983). Not only can the state or municipality not terminate an employee based on speech on matters of public concern, it can not condition any aspect of public employment, such as promotion, hiring or transfers, on suppression of public speech. Rutan v. Republican Party of Illinois, 497 U.S. 62, 74 (1990).

Citing Wu v. Thomas, 847 F.2d 1480, 1485 (11th Cir. 1988), the defendants first argue that the plaintiff cannot recover on his First Amendment claim because he has no stated property interest in a promotion. The defendant's reliance on Wu is misplaced. In a standard due process claim for termination of employment, at issue is whether the individual terminated was derived of a life, liberty or property interest without due process of law. There is no doubt that a property interest must exist for a procedural due process claim to be stated. However, the focus of the First Amendment retaliation claim is not to vindicate the plaintiff's claim to employment, but instead to prevent the chilling effect on speech about matters of public concern or religion created when employment opportunities are withdrawn. Thus, any action antagonistic to the plaintiff taken by the government with the purpose(s) of quieting the plaintiff, or limiting his authority to speak or of forcing conversion of belief will support a First Amendment retaliation claim. See, Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1562 (11th Cir. 1995) ("A state employee does not need a protectable property interest, or any other state-created right, in order to maintain a First Amendment retaliatory discharge claim.").

Second, the defendants assert that the plaintiff can only bring claims that accrued within

two years prior to the filing of the instant suit on April 19, 1996. Thus, contends the defendants, only those claims that accrued on or after April 19, 1994, can be brought by the plaintiff. The court agrees. Any claims accruing prior to April 19, 1994 will be dismissed.

The defendants last argue that the individual defendants are entitled to qualified immunity because there is no evidence that the failure to promote the plaintiff was based upon his speech. As an initial matter, this court notes that the defendants' argument for qualified immunity is not premised upon the absence of any clearly established law that the alleged retaliation for contradicting a school's religious policy violates of the First Amendment; instead, the qualified immunity argument is predicated on a purely factual determination — whether the plaintiff's statements were a substantial factor in decision not to promote him. Under Johnson v. Jones, ___ U.S. ___, 115 S.Ct. 2151, 2156 (1995), a determination of evidence sufficiency is not immediately appealable, unlike determinations of whether uncontested factual allegations demonstrate a violation of clearly established law. Thus, the determination of the court, if it denies qualified immunity, would not allow for immediate appeal. For this reason, the court must be especially sensitive to the facts of the case in deciding whether the plaintiff can possibly state a claim, because the denial of qualified immunity has the potential of exposing the Superintendent of Education and School Board members to particularly cumbersome litigation.

In Bryson v. City of Waycross, 888 F.2d 1562, 1565-66 (11th Cir.1989), the Eleventh Circuit Court of Appeals set out the test for determining whether a plaintiff can establish a claim of First Amendment retaliatory discharge:

> In cases where the state denies discharging the employee because of speech, a four-stage analysis has evolved. See generally Kurtz v. Vickrey, 855 F.2d 723 (11th Cir.1988). At the first stage, the court determines the threshold issue raised in Pickering, whether the employee's speech may be "fairly characterized as constituting speech on a matter of public concern." Rankin [v. McPherson], 483 U.S. [378,] 384 [(1987)] (quoting Connick v. Myers, 461 U.S. 138, 146 [] (1983)). The court examines the content, form, and context of the employee's speech to determine whether it addresses a matter of public concern. Rankin, 483 U.S. at 384- 85 []. Second, if the speech addresses a matter of public concern, the court then applies the second prong of Pickering, the balancing test, weighing the employee's first amendment interests against "the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering [v. Board of Education], 391 U.S. [563, 568 (1968)]. Again, the context and circumstances of the employee's speech must be considered. Rankin, 483 U.S. at 388 []. If the public employee prevails on the balancing test, the fact-finder determines whether the employee's speech played a "substantial part" in the government's decision to demote or discharge the employee. Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274 [] (1977). Fourth, if the employee prevails by showing that the speech was a substantial

motivating factor in the state's employment decision, the state must prove by a preponderance of the evidence that "it would have reached the same decision ... even in the absence of the protected conduct." Mt. Healthy, 429 U.S. at 286 []. This fourth stage has been referred to as a "but for" test; the employer must show that "its legitimate reason, standing alone, would have induced it to make the same decision." Price Waterhouse v. Hopkins, 490 U.S. 228 [] (1989).

Where First Amendment religious issues are involved, "public concern," as such, is not an essential element. A bona fide religious concern is tantamount to a "public concern." Neither the first nor the second aspects of the Bryson test are at issue here. The only determination involved is whether the plaintiff's speech played a "substantial part" in the decision of Parrish not to promote the plaintiff. At the summary judgment stage, the plaintiff's burden in showing whether his speech played a "substantial part" in the decision not to promote is not heavy. See, Beckwith v. City of Daytona Beach Shores, 58 F.3d at 1564. Nonetheless, the plaintiff must be able to show that a reasonable juror could find a "causal nexus between retaliatory motive and the adverse employment decision." Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996). The question here is whether the plaintiff has failed to demonstrate such a nexus, both with regards to Parrish and with regard to the School Board members.

Parrish has directed no hostile or disparaging comments towards the plaintiff and he never requested that the plaintiff cease his criticism. He merely disagreed and he disagreed from a position of authority over the plaintiff.

The petitioner cannot state a claim against the Board members in their individual capacities because they never made any employment decisions regarding him. He was never presented to them as a candidate for principal at any of the schools. The School Board members did not have the opportunity to make any employment decisions concerning the plaintiff. The Board members in their official capacities or, in effect, the Board, may be liable if Parrish violated plaintiff's First Amendment rights.

## Conclusion

The issue is close and doubtful because the issue is whether Parrish, not others, was motivated to retaliate against plaintiff because of his beliefs about religion. On the other hand, if Parrish's decision(s) were motivated by complaints of others based on such grounds, he and the

Board could be liable. The narrow remaining issue is whether there is any substantial evidence that Parrish was substantially motivated by the plaintiff's religious expressions or whether he was substantially influenced by the motivations of others in that regard. The court will further consider the issue after giving the plaintiff the opportunity to point to specific, substantial, admissible evidence which could create a reasonable inference that Parrish was so motivated or so influenced. Any such submission will be by a highlighting of specific evidence in attached excepts in the record, not paraphrasings, innuendo or argument. Plaintiff will file said excerpts within 10 days. The defendant will have 7 days to respond. This further consideration and analysis is necessary because it would be illogical to decide that every public employee who expresses himself of herself concerning religious issues can automatically proceed to jury trial if he or she does not receive a desired promotion.

For the foregoing reasons, the defendant's motion for summary judgment will be GRANTED, in part and DENIED, in part.

This 4th day of April 1997.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE